UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :      11 Civ. 6390 (WHP)

DISPLAY TECHNOLOGIES, LLC,
                                  :      <u>MEMORANDUM & ORDER</u>

         Plaintiff,
                                  :

         -against-
                                  :

DISPLAY INDUSTRIES, LLC,
                                  :

         Defendant.
                                  :
----------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 12/5/11 |

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Display Technologies, LLC ("Display Tech") alleges that Defendant Display Industries, LLC ("DIL") infringes U.S. Patent No. 5,645,176 (the " '176 Patent"). Display Tech moves for a preliminary injunction enjoining the marketing and sale of DIL's single-piece UltraTracker display rack. For the following reasons, Display Tech's motion for a preliminary injunction is denied.

## BACKGROUND

I. <u>The '176 Patent</u>

        The invention disclosed by the '176 Patent is a gravity-fed display rack for bottled sodas and other beverages stored in refrigerated cases at convenience stores and other retail locations ("display rack"). ('176 Patent Col. 1, 24-26.) The claimed display rack has multiple channels separated by side walls and a front section designed to display the beverage label. ('176 Patent Col. 1, 5-8; Col. 3, 6-12.) Dependant claim 2 adds the limitation that the front

section extends further than the front end of the channel. ('176 Patent Col. 10, 30-32.) Dependant claim 26 adds the limitation that the channel and front section be made from a single piece of molded plastic ("single-piece display rack").

## II. The Parties

Display Tech and DIL are competitors. For nearly two decades they have been the top two suppliers in their industry. Both have marketed and sold display racks to Coca Cola Enterprises, PepsiCo, Arizona Iced Tea, and numerous other distributors of retail beverages. (See Declaration of Eric Neumann, dated Oct. 4, 2011 ("Neumann Decl.") ¶¶ 5-8; Declaration of Mark Higgins, dated Oct. 26, 2011 ("Higgins Decl.") ¶¶ 27-43.)

From 2001 to 2004, DIL was Coca Cola's preferred supplier. (Higgins Decl. ¶ 29; Declaration of Michael Noxon, dated Nov. 1, 2011 ("Noxon Decl.") ¶ 6.) During those years, both Display Tech and DIL expected that DIL would become Coca Cola's exclusive supplier. (Higgins Decl. ¶ 30; Noxon Decl. ¶ 6.) However, by 2004, Display Tech began to increase its share of Coca Cola's business. (Noxon Decl. ¶¶ 6-10.) Between 2006 and 2010, Display Tech supplied nearly ninety percent of Coca Cola's display racks. (Noxon Decl. ¶ 14.) However, on October 30, 2011, the polarity reversed when Coca Cola entered into an exclusive arrangement with DIL. (Neumann Decl. ¶ 18.)

## III. Prior Litigation and Settlement

In 1999, Display Tech brought suit against DIL's predecessor alleging that DIL's then-existing two-piece UltraTracker display rack infringed the '176 Patent. (Neumann Decl. ¶¶ 34-35.) In 2000, the parties settled that dispute and entered into a license agreement that provided in part:

> A. [Display Tech] grants to Display Industries a . . . non-terminable, worldwide license under the ['176] Patent to . . . sell Licensed Products and insubstantial structural variations on the Licensed Products . . . .
>
> B. [Display Tech] also grants to Display Industries a . . . non-terminable, worldwide license under the ['176] Patent to . . . sell Modified Products . . . . "Modified Products" shall include any apparatus (other than Licensed Products and insubstantial structural variations on the Licensed Products) that has structure which is no closer to the claimed structure of any valid claim of the Licensed Patent than in the structure of the Licensed Products.

(See Declaration of Steven H. Reisberg, dated Oct. 4, 2011 ¶ 10, Ex. 6 ("License") at 1-2; Neumann Decl. ¶ 35.) "Licensed Products" are defined as "the types of products depicted in Exhibit A." (License at 1.) Exhibit A depicts a display rack with lines across the front section indicating a two-piece construction. However, Exhibit A bears no annotations explaining the features of the licensed product and contains no express limitations. (License, Ex. A.) Finally, paragraph 7 of the License provides that "[a]ny dispute as to whether a Proposed Design qualifies as a Modified Product shall be finally resolved exclusively by [sic] confidential Binding Mediation Proceeding . . . ." (License at 4.)

IV. The Accused Single-Piece UltraTracker Display Rack

On November 14 and 15, 2001, DIL's president, Mark Higgins, sent separate letters to Display Tech's then-president, Richard Jay, disclosing plans for a new UltraTracker product. (Declaration of Richard Jay, dated Oct. 30, 2011 ("Jay Decl.") ¶ 4, Exs. 1 and 2.) The new UltraTracker would be molded as a single-piece tray and the front section would extend further than the front end of the channel. (Jay Decl., Ex. 2.) Higgins wrote that DIL believed the new product was covered by the License but "out of an abundance of caution wanted to make sure Display [Tech] has no objections before we go forward." (Jay Decl., Ex. 1.) Although

Higgins does not recall receiving a response, Jay replied on November 30, 2001, warning that the new product was not covered by the License and that Display Tech would aggressively enforce its intellectual property rights if DIL went forward. (Higgins Decl. ¶ 19; Jay Decl. ¶ 5, Ex. 3.) DIL did not respond and neither party initiated mediation as contemplated under the License. (Jay Decl. ¶ 5.)

The parties dispute when DIL began marketing and selling the accused single-piece UltraTracker. Display Tech maintains that, until the summer of 2011, sales of the single-piece UltraTracker, if any, were negligible and no one at Display Tech was aware of the product. (Neumann Reply Decl. ¶¶ 22-23, 44-49; Noxon Decl. ¶¶ 4, 18.) DIL, on the other hand, avers that it began selling and marketing the single-piece UltraTracker in 2003. To support its position, DIL submits evidence including: (1) 2003 and 2004 invoices listing sales of products with codes for the single-piece UltraTracker (Higgins Decl. ¶ 31, Ex. B), (2) a 2004 consumer award from Coca-Cola for DIL's "One-Piece" design (Higgins Decl. ¶ 32, Ex. C; Nov. 13, 2011 Hearing Transcript ("Hr. Tr.") at 76-77, Defendant's Exhibit ("DX") EE), (3) a 2004 advertisement in the POP trade magazine touting the Coca-Cola award (Hr. Tr. at 75, DX MM at 40, 73), (4) a 2006 advertisement in the POP trade magazine, prominently displaying the accused product (Higgins Decl. ¶ 49, Ex. G; Hr. Tr. at 55-56, DX PP at 36-37.), and (5) 2004-2006 marketing materials available on DIL's website, prominently displaying single-piece UltraTracker products (Higgins Decl. ¶ 46, Exs. E, F; Hr. Tr. at 71-73, DX F, H, I). In addition, DIL offered sales figures for its single-piece UltraTracker product since 2003 and produced all supporting invoices to Display Tech. (Hr. Tr. at 78-84, DX RR-A.) The sales figures reveal that DIL sold over one million single-piece Ultra Tracker units, with most of those sales occurring

between 2003 and 2006. (Hr. Tr. 83-84, DX RR-A, UU.) Beginning in 2004, the single-piece UltraTracker was DIL's most popular display rack. (DX UU, WW.)

While Display Tech points to several structural inconsistencies in the pictures of the display racks in DIL's marketing materials and advertisements (see, e.g., Neumann Reply ¶¶ 34-38), these materials indicate that DIL was marketing and selling a single-piece display rack at least as early as 2004. This Court further notes that DIL's full page advertisement for its single-piece UltraTracker appeared opposite Display Tech's advertisement in the POP trade magazine. (Hr. Tr. at 55-56, DX PP at 36-37.) Moreover, the 2004 Coca-Cola award and sales figures are uncontested.[1] Finally, contrary to testimony provided by Display Tech's sales representative, Higgins testified that he saw single-piece UltraTracker units in numerous convenience stores near Display Tech's Manhattan headquarters. (Hr. Tr. at 84-85.) Thus, this Court finds that DIL has marketed and sold the single-piece UltraTracker since 2004.

## DISCUSSION

To obtain a preliminary injunction a movant must demonstrate, among other factors, (1) a likelihood of success on the merits and (2) irreparable harm in the absence of an injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1049 (Fed. Cir. 2010). Irreparable harm requires a showing that money damages, if later proven, are somehow inadequate to compensate

---

[1] Display Tech initially objected to the sales figures provided by DIL because they could not be reconciled with the underlying invoices. (Hr. Tr. at 80-81.) Display Tech acknowledged, however, that tens of thousands of single-piece UltraTracker units had been sold in 2003. (Hr. Tr. 80-81, 140.) Subsequently, DIL provided additional evidence explaining the discrepancy and Display Tech does not object to the new figures.

for the injury inflicted by the alleged wrongdoing. See Altana Pharma AG v. Teva Pharmaceuticals USA, Inc., 566 F.3d 999, 1011 (Fed. Cir. 2009); see also Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (Fed. Cir. 1979). The Federal Circuit and Second Circuit have repeatedly found that undue delay in bringing suit undercuts a movant's claim of irreparable harm. See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir 1995); see also Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005) ("[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (quoting Citibank, N.A. v. Cititrust, 756 F.2d 273, 276 (2d Cir. 1985)).

        Display Tech cannot show irreparable harm because it has competed against the single-piece UltraTracker since 2004. The seven year hiatus between DIL's introduction of the single-piece UltraTracker to the market and this litigation demonstrates that there is no genuine urgency to Display Tech's request for injunctive relief. See High Tech, 49 F.3d at 1557 (holding that seventeen months was "a substantial period of delay militating against the issuance of a preliminary injunction"). During the seven year interval, Display Tech, by its own account, steadily increased its market share and became Coca-Cola's largest supplier. Meanwhile, DIL's market share decreased steadily. These uncontested facts undermine any immediate threat of irreparable harm.

        Moreover, this Court notes that DIL has raised several substantial defenses including license, equitable estoppel, and laches. Where a defendant raises a "substantial question" concerning the enforceability of a patent, a plaintiff must produce countervailing evidence demonstrating the defense "lacks substantial merit." Novo Nordisk of North Am., Inc.

v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996). Display Tech has not met its burden of contravening DIL's license defense. While Exhibit A depicts a two-piece display rack, the License does not expressly limit the covered products to two-piece products. In fact, the License appears to cover the entire '176 Patent and broadly defines Licensed Products as the "types of products depicted in Exhibit A" (emphasis added). That definition is ambiguous at best. And the parties' parol evidence provides some support for both Display Tech's and DIL's divergent interpretations. Accordingly, Display Tech's motion for preliminary injunction is denied.

Finally, this Court notes that the parties agreed in settling their earlier civil action in this district that mediation would be the exclusive means to resolve the scope of the License—the central question in this litigation. Accordingly, the parties are directed to proceed to mediation.

## CONCLUSION

For the foregoing reasons, Display Tech's motion for a preliminary injunction is denied. In addition, the parties are directed to proceed to mediation and this action is stayed in its entirety pending the outcome of mediation. The parties are directed to submit a joint status report by January 31, 2012.

Dated: December 5, 2011
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Steven H. Reisberg, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
*Counsel for Plaintiff*

Frederick L. Whitmer, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street
14th Floor
New York, NY 10019
*Counsel for Defendant*