USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DISPLAY TECHNOLOGIES, LLC,

                Plaintiff,

         v.

DISPLAY INDUSTRIES, LLC,

                Defendant.

Civil Action No. 11-6390 (WHP)

**ORDER**

WHERAS, on October 4, 2011, Plaintiff Display Technologies, LLC ("Display Tech") filed a motion for a preliminary injunction to enjoin Defendant Display Industries, LLC ("Defendant" or "DIL") from infringing U.S. Patent No. 5,645,176 (the '176 patent) by selling a one piece product that DI markets under the name Ultra Tracker and  (hereinafter the "Accused Product")

WHEREAS, Defendant DIL raised certain defenses to the motion for a preliminary injunction, including that the Accused Product was within the scope of a License contained within a prior Settlement Agreement, dated March 2000, between the parties;

WHERAS, on December 5, 2011, this Court entered a Memorandum and Order (i) denying the motion for a preliminary injunction and (ii) directing the parties to proceed to binding mediation as the exclusive means to resolve the scope of the License, as required by the Settlement Agreement, and stayed further proceedings in this action pending the outcome of the binding mediation;

WHEREAS, on February 27, 2012, the parties retained Roderick R. McKelvie, Esq., to serve as the mediator for the binding mediation pursuant to the Settlement Agreement,

and further reaffirmed that the decision by Mr. McKelvie shall be final and binding upon the parties;

WHERAS, on March 21, 2012, Mr. McKelvie issued his Mediator's Decision, a copy of which is attached hereto as Exhibit A, in which he determined that the Accused Product (which is referred to in the Mediator's Decision as the "2001 UltraTracker") is not within the scope of the License granted in the Settlement Agreement;

NOW IT IS HEREBY ORDERED that, based on the Mediator's Decision, which the parties agreed shall be final and binding upon the parties, the Accused Product is held to be not Licensed under the Settlement Agreement.

U.S.D.J.

Dated: New York, New York
       April 18, 2012

# EXHIBIT A

**Binding Mediation Between Display Technologies, LLC and Display Industries, LLC
Pursuant to a Settlement Agreement Dated Effective as of December 31, 1999**

### MEDIATOR'S DECISION

Steven H. Reisberg and Thomas J. Meloro, Willkie Farr & Gallagher LLP, Counsel for Display Technologies, LLC.

Frederick L. Whitmer and Megan Bussey, Kilpatrick Townsend & Stockton LLP, Counsel for Display Industries, LLC

Display Technologies, LLC and Display Industries, LLC have entered into binding mediation to resolve a dispute as to whether a Display Industries product falls within the scope of a license Display Technologies granted to Display Industries under a Settlement Agreement (the "Agreement") signed in March of 2000 and dated effective December 31, 1999. This is the mediator's decision based on briefs submitted by the parties and a hearing held by agreement in New York on March 19, 2012.

The Agreement resolved a dispute between the parties on Display Technologies' contention Display Industries' UltraTracker display rack infringed the claims of U.S. Patent No. 5,645,176 (the '176 patent). Display Technologies granted a license under the '176 patent to Display Industries to make, have made, import, export, use, sell and offer to sell "Licensed Products," insubstantial structural variations on the Licensed Products, and "Modified Products." Licensed Products were defined as products depicted in Exhibit A to the Agreement. Modified

Products were defined as "shall include any apparatus (other than Licensed Products and insubstantial structural variations on the Licensed Products) that has structure which is no closer to the claimed structure of any valid claim of the Licensed Patent than is the structure of the Licensed Patent."

Display Technologies alleges a new version of Display Industries' UltraTracker display rack (hereinafter the "2001 UltraTracker") infringes claims of the '176 patent. Among other defenses, Display Industries asserts it is not liable for infringement because the 2001 UltraTracker is a licensed product under the Agreement. The Agreement provides that a dispute as to whether a Proposed Design qualifies as a Modified Product shall be resolved by binding mediation. The parties have agreed on the undersigned as the mediator.

1.     Scope Of The Mediation

The Agreement identifies three categories of Licensed Products: 1) Licensed Products as the types of products depicted in Exhibit A to the Agreement; 2) products with insubstantial structural variations on the Licensed Products as depicted in Exhibit A; and 3) Modified Products. The parties have agreed Paragraph 7 of the Agreement provides for mediation to resolve whether a display rack is licensed because it falls within one of these three categories.

2.     Is The 2001 UltraTracker Display Rack A Licensed Product As Depicted In Exhibit A To The Agreement?

Exhibit A to the Agreement is a Display Industries drawing of its UltraTracker display rack. Display Technologies argues that the 2001 UltraTracker display rack is not licensed as a rack that is depicted in Exhibit A, as it is different from that rack in two respects. First, Exhibit A depicts a two-piece rack, while the 2001 UltraTracker is a single-piece rack. Second, the 2001 UltraTracker has a front ring that extends forwardly beyond the rack. The UltraTracker depicted in Exhibit A does not have these features. I agree with these arguments and find that for these

reasons the 2001 UltraTracker display rack is different from the display rack depicted in Exhibit A. Consequently, the 2001 UltraTracker is not a Licensed Product as depicted in Exhibit A to the Agreement.

3.  Is the 2001 UltraTracker Display Rack a Licensed Product As It Is An Insubstantial Variation on the Licensed Product?

Display Technologies argues that the differences between Display Industries' 2001 UltraTracker display rack and the rack depicted in Exhibit A are not insubstantial. As evidence of the significance of the two new or changed elements described above, it notes that the specification of the '176 patent identifies and claims the one-piece unitary frame of its rack and the extended front ring.

Display Industries argues that the transition to a one-piece unitary frame was an insubstantial variation from the UltraTracker. As evidence of that, it argues that this one-piece unitary frame element claimed in the patent was in the prior art. While that argument may establish that claims to this element are not new, it does not show the one-piece unitary frame was not a substantial or significant element of the claimed invention. The argument highlights the difference between the technical or marketing significance of an element of a design of a product (what makes it work, why it sells) and whether the idea to use that element or the design was novel (whether that element of a claimed invention or its use in combination with other elements is obvious). It may be that the incorporation of this element was not separately patentable, but it is a significant element of the Display Technologies design. In this part of the Agreement, Display Industries agreed that a new UltraTracker display rack with a new design element that was not insubstantial would not fall within the definition of a Licensed Product. This aspect of the 2001 UltraTracker is not an insubstantial change from the rack described in Exhibit A. Consequently, I find it does not come within the definition of Licensed Product.

Page 3

Display Technologies argues that the incorporation of an extended front ring in the 2001 UltraTracker is not an insubstantial change from the display rack describe in Exhibit A. Display Industries responds that it was not on notice that Display Technologies would argue this was a significant element of its invention, and notes that it was not until Display Technologies filed for re-examination that Display Technologies identified the extended front ring as a patentable invention in claim 32. As Display Technologies notes, this argument is undermined by the exchange of correspondence between the parties after they entered into the Agreement. In that exchange, Display Industries sought confirmation that two changes to the UltraTracker would fall within the license: the unibody design and the extended front ring.

On balance, and based in part on the testimony of the witnesses on the value or benefit of an extended front ring, I find the addition of the extended front ring to the 2001 UltraTracker was not an insignificant change from the design in Exhibit A. Consequently, I find this element of the 2001 UltraTracker does not fall within the definition of a Licensed Product under the Agreement.

4. Is the UltraTracker Display Rack a Licensed Product as a Modified Product Because It Has A Structure Which Is No Closer To The Claimed Structure Of Any Valid Claim Of The Licensed Patent Than Is The Structure Of The Licensed Patent?

Display Technologies argues that the 2001 UltraTracker does not qualify as a Modified Product as its structure is closer to a valid claim than the Licensed Product depicted in Exhibit A, in that it incorporates the one-piece unitary construction claimed in claim 26 of the patent. It also argues that the front ring adds a feature claimed in claim 32, which was added during reexamination and is in US 5,645,176 C1 issued on Nov. 5, 2002. (During the hearing, the parties confirmed that they do not read the Agreement as putting to the Mediator the issue of

whether any claim is valid for the purpose of determining whether a product falls within the definition of a Modified Product.)

   a. Is The 2001 UltraTracker Closer To The Claimed Structure Of Any Valid Claim Than The Licensed Product Depicted In Exhibit A Because It Has A One-Piece Unitary Construction?

The 2001 UltraTracker is closer to a claimed structure, because it adds to the original UltraTracker the additional element of being a one-piece unibody which is an element of claim 26. Consequently, this element of the 2001 UltraTracker does not fall within the scope of the license Display Technologies granted Display Industries under the Agreement.

   b. Is The 2001 UltraTracker Closer To The Claimed Structure Of Any Valid Claim Than The Licensed Product Depicted In Exhibit A Because It Has An Extended Front Ring?

Display Industries argues that the incorporation of an extended front ring does not bring the 2001 UltraTracker closer to the claimed structure of any valid claim because the claim to this element, claim 32, was not issued until after the parties entered into the Agreement. The claim was obtained in 2002 as a result of a petition for re-exam Display Technologies filed in July of 2000. I agree with Display Industries. Display Technologies should not be permitted to impose a limitation to the license after the Agreement. We know that support for the new claim to the extended front ring can be found in the specification, but as of the date the parties entered into the Agreement it had not been incorporated in a claim. In one sense these statements in the specification put Display Industries on notice that Display Technologies considered this element of its design to be significant. And Display Technologies citation to correspondence between the parties after the Agreement suggests Display Industries recognized that adding an extended front ring would be a significant change in its design. However, from Display Industries perspective, it was fair for it to assume this change would fall within the definition of a Modified Product, as it was disclosed in the specification but not claimed. For these reasons I find this element of the

2001 UltraTracker falls within the definition of a Modified Product that the parties agreed would be licensed.

5.      Costs

As it appears this mediation was a necessary step to resolving the dispute between the parties, and as each side set out reasonable arguments in support of its position, neither party should recover costs of this proceeding.

March 21, 2012

Roderick R. McKelvie